IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| WON-DOOR CORPORATION, a Utah Corporation,<br><br>                Plaintiff,<br><br>vs.<br><br>CORNELL IRON WORKS, INC., a Pennsylvania Corporation,<br><br>                Defendant. | MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION<br><br><br>Case No. 2:13-CV-331-TS<br><br>Judge Ted Stewart |

This matter is before the Court on Plaintiff Won Door Corporation's ("Won Door") Motion for a Preliminary Injunction. For the reasons set forth below, the Court will grant Plaintiff's Motion.

I.   BACKGROUND

Plaintiff manufactures movable partitions designed to extend and retract across rooms, and related components used to install such partitions.   Defendant Cornell Iron Works, Inc. ("Cornell") manufactures a wide range of overhead doors and door closure products.   In addition to manufacturing these items, both parties also install their respective products at customer sites.

1

At issue in this case are a variety of accordion-style partitions that are suspended from overhead attachments.

Since 2008, Plaintiff and Defendant have directly competed in a two-player market manufacturing and installing accordion-style partitions in church buildings for the Church of Jesus Christ of Latter-Day Saints ("LDS Church"). On July 28, 2009, Plaintiff filed U.S. Patent Application 12/510,382, which was subsequently published on February 3, 2011, as US2011/0024061 ("the '061 Publication"). Plaintiff's application described a header assembly that suspends the partition and comprises a single channel in which the partition slides to extend or retract. On February 9, 2012, one of Plaintiff's employees obtained a sample of a one-track assembly being used by Defendant in installations and notified Plaintiff's Installation Manager.

In May 2012, Plaintiff contacted Defendant asserting that Defendant's one-track assembly appeared to fall within the scope of the '061 Publication and that Plaintiff had a right to pursue a legal remedy once the patent issued. On November 27, 2012, Plaintiff's application issued as U.S. Patent 8,316,914 ("the '914 Patent"). On May 1, 2013, another of Plaintiff's employees observed a partition installed by Defendant that used the one-track assembly. On May 10, 2013, Plaintiff filed suit against Defendant alleging patent infringement. On June 4, 2013, Plaintiff moved for a preliminary injunction to enjoin Defendant from "making, using, selling, or offering to sell movable partitions, header assemblies, and overhead tracks" that infringe the '914 Patent.[1]

---

[1] Docket No. 7, at 1.

II.  DISCUSSION

"It is well established that a preliminary injunction is an extraordinary remedy reserved only for those cases where it is clearly warranted."[2]  Requests for injunctive relief in cases arising under the Patent Act are decided according to the traditional four-factor test: "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."[3]

A.     LIKELIHOOD OF SUCCESS

For patent infringement claims, the first factor of the preliminary injunction test involves two prongs:

> a patentee must show that, in light of the presumptions and burdens that will inhere at trial on the merits: (1) the patentee will likely prove that the accused infringer infringes the asserted patent; and (2) the patentee's infringement claim will likely withstand the accused infringer's challenges to the validity and enforceability of the patent.[4]

"A patent holder seeking a preliminary injunction bears the ultimate burden of establishing a likelihood of success on the merits with respect to the patent's validity."[5]

---

[2] *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 678 F.3d 1314, 1334 (Fed. Cir. 2012).

[3] *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008).

[4] *Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1259 (Fed. Cir. 2012).

[5] *Altana Pharma AG v. Teva Pharm. USA, Inc.*, 566 F.3d 999, 1005 (Fed. Cir. 2009).

1. INFRINGEMENT

Plaintiff provided the Court with an element-by-element analysis of Defendant's track, demonstrating how Defendant's track meets each limitation of claim 1 and claim 7 of the '914 Patent. Defendant has not challenged Plaintiff's infringement analysis. Therefore, for purposes of this Motion, the Court finds that Plaintiff is likely to prove that Defendant's overhead track infringes claim 1 and claim 7 of the '914 Patent.

2. VALIDITY

Patents enjoy a statutory presumption of validity.[6] In the preliminary injunction context, if an "alleged infringer . . . launch[es] an attack on the validity of the patent, the burden is on the challenger to come forward with evidence of invalidity."[7] "[T]o defeat [an] injunction based on invalidity, . . . the [challenger] must establish a substantial question of invalidity . . . ."[8] If the alleged infringer raises a substantial question of invalidity, "the burden shifts to the patentee to show that the defense lacks substantial merit."[9]

Defendant argues that each element of claims 1 and 7 of the '914 Patent were taught by prior art, and that the '914 Patent is therefore invalid for obviousness. Plaintiff argues that

---

[6] 35 U.S.C. § 282 (2006).

[7] *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1377 (Fed. Cir. 2009).

[8] *Abbott Labs. v. Andrx Pharm., Inc.*, 473 F.3d 1196, 1201 (Fed. Cir. 2007).

[9] *Altana Pharma*, 566 F.3d at 1006.

Defendant has failed to explain why a person of ordinary skill in the art would have been motivated to combine the elements in the cited prior art to create the '914 Patent. Plaintiff also argues that objective indicators of nonobviousness disprove Defendant's assertion that the '914 Patent is invalid for obviousness.

    a. OBVIOUSNESS

35 U.S.C. § 103 provides that

> [a] patent for a claimed invention may not be obtained . . . if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains.

"[A] patent composed of several elements is not proved obvious by demonstrating that each of its elements was, independently, known in the art."[10] Rather, the appropriate inquiry is "whether the subject matter would have been obvious to a person of ordinary skill in the art at the time of the asserted invention."[11] "Although the incentive to combine may be inferred from the nature of the problem,"[12] "[t]here must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness."[13]

---

[10] *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007).

[11] *In re Kahn*, 441 F.3d 977, 985 (Fed. Cir. 2006).

[12] *K-Tec, Inc. v. Vita-Mix Corp.*, 729 F. Supp. 2d 1312, 1325 (D. Utah 2010) (citing *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1373 (Fed. Cir. 2008)).

[13] *Innogenetics*, 512 F.3d at 1373.

Defendant presents a thorough comparison of each element of claims 1 and 7 of the '914 Patent to prior art and provides expert testimony indicating that they "are simply common sense combinations of old elements known in the prior art or predictable variations of known elements. Indeed, the prior art references . . . are all from the same field of technology as the '914 Patent."[14] But even if the Court accepts Defendant's assertions that each element of claims 1 and 7 of the '914 Patent are analogous to prior art, "the mere recitation of the words 'common sense' without any support adds nothing to the obviousness equation."[15]  Defendant has not provided support for its assertion that common sense would have driven a person of ordinary skill in the art to combine the elements in the prior art to create the '914 Patent.

Plaintiff also argues that objective indicators of nonobviousness demonstrate that Defendant's invalidity argument lacks substantial merit.  "Objective evidence of nonobviousness is an important component of the obviousness inquiry because 'evidence of secondary considerations may often be the most probative and cogent evidence in the record.  It may often establish that an invention appearing to have been obvious in light of the prior art was not.'"[16]  The Federal Circuit has recognized a number of objective indicators, including commercial success of the patented device, whether competitors copied the innovation, and

---

[14]Docket No. 41, at 15.

[15]*Mintz v. Dietz & Watson*, 679 F.3d 1372, 1377 (Fed. Cir. 2012).

[16]*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1349 (Fed. Cir. 2012) (internal quotation marks omitted).

whether the innovation addressed a long felt but unmet need.[17]  "For objective evidence of secondary considerations [such as indicia of nonobviousness] to be accorded substantial weight, its proponent must establish a nexus between the evidence and the merits of the claimed invention."[18]

First, the unitized track described in the '914 Patent has had commercial success.  "Since 2010, [the unitized track] has generated over $50 million in product sales and project specifications for projects incorporating the unitized track and header assembly of the '914 Patent."[19]  Plaintiff explains that "[e]nvironmental sustainability is a top-five issue in the construction industry" and that the unitized track allows Plaintiff to reduce the use of wood and gypsum board while using recycled materials for certain components, which are all "major selling points of the unitrack design."[20]  Plaintiff offers testimony explaining that

> [t]he two separate track support brackets of the invention can be manufactured at a cheaper cost than a single track support bracket because a single track support bracket that is strong enough to support the weight of the track and movable partition requires significantly more raw material and a larger extrusion or stamping die to manufacture than two separate track support brackets.[21]

---

[17]*See, e.g.*, *Leo Pharm. Prods., Ltd. v. Rea*, No. 2012-1520, 2013 WL 4054937, at *12 (Fed. Cir. Aug. 12, 2013); *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1367 (Fed. Cir. 2012).

[18]*In re Huai-Hung Kao*, 639 F.3d 1057, 1068 (Fed. Cir. 2011).

[19]Docket No. 46, at 3.

[20]*Id.* at 2.

[21]Docket No. 44, at 2.

Additionally, the design "simplifies installation and maintenance . . . [because it] allows flexibility in designing a door . . . [and] because each of the two track support brackets is lighter and easier for the installer to lift into place."[22] "The net result is greater profits from a particular job site . . . ."[23] Defendant concedes that the unitized track creates cost savings. Therefore, the Court finds that there is a sufficient nexus between the patented device and the financial success associated with the device.

Second, Defendant copied Plaintiff's innovation. "Not every competing product that arguably falls within the scope of a patent is evidence of copying. Otherwise every infringement suit would automatically confirm the nonobviousness of the patent."[24] Rather, "copying requires evidence of efforts to replicate a specific product."[25] Defendant and Plaintiff are the only players in a two-player market for the LDS Church's business. Both parties have explained that the LDS Church's bid specifications require use of the unitized track at issue in this case. Therefore, Defendant cannot participate in this market without copying Plaintiff's innovation. Moreover, a contractor who sells Defendant's doors describes them as being "Won Door Equal."[26] Granted, Defendant's own advertisement states that "Cornell's TranZform Accordian

---

[22]*Id.* at 2.

[23]Docket No. 46, at 2–3.

[24]*Iron Grip Barbell Co., Inc. v. USA Sports, Inc.*, 392 F.3d 1317, 1325 (Fed. Cir. 2004).

[25]*Wyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010).

[26]Docket No. 9 Ex. A, at 2.

Fire door specifications differ from Won-Door's specification because Cornell has improved upon Won-Door's design without infringing on their patents."[27] Whatever the extent of the replication, it appears as though Defendant has attempted to replicate Plaintiff's design.

Third, Plaintiff's track design met a long felt need in the industry. "The length of the intervening time between the publication dates of the prior art and the claimed invention" is an objective indicator of an innovation having met a long felt need in the industry.[28] Here, the most recent prior art cited by Defendant—U.S. Patent 5,481,840, issued on January 9, 1996—was thirteen years old when the application that resulted in the '914 Patent was filed. The Court finds that the significant period of time between publication of the prior art and development of the '914 Patent is an objective indicator of nonobviousness.

Based on the foregoing, the Court finds that Plaintiff will likely prove infringement, and will likely withstand Defendant's challenges to the validity and enforceability of the '914 Patent.

B.  IRREPARABLE HARM

The Federal Circuit has recognized that "the existence of a two-player market may well serve as a substantial ground for granting an injunction—e.g., because it creates an inference that an infringing sale amounts to a lost sale for the patentee . . . ."[29]  "A finding of infringement

---

[27] *Id.* Ex. B, at 5.

[28] *Leo Pharm. Prods.*, 2013 WL 4054937, at *12 (holding that a period of fourteen years "speaks volumes" as to the nonobviousness of the patent).

[29] *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1151 (Fed. Cir. 2011) (emphasis omitted).

does not create a presumption of irreparable harm. Nevertheless, the patent holder's right to exclude is an important factor in the court's analysis."[30] This is because "[e]xclusivity is closely related to the fundamental nature of patents as property rights [and] is an intangible asset that is part of a company's reputation."[31] Therefore, "[w]here two companies are in competition against one another, the patentee suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented inventions."[32] Among those harms is the need to lower its own price to compete against its own invention. Calculation of the resulting loss greatly complicates the measurement of damages.

As discussed above, both parties agree that the only buyer in the relevant market—the LDS Church—requires use of the overhead track design encompassed by the '914 Patent in its bid specifications. Therefore, to participate in the market, Defendant must use Plaintiff's design. This requires Plaintiff to compete against its own invention and strips Plaintiff of its right to exclusivity of its innovation.

Defendant argues that Plaintiff delayed in bringing its Motion and that such delay is evidence of a lack of urgency and a lack of irreparable harm. "Delay is a factor in evaluating

---

[30] *EcoNova Inc. v. DPS Utah*, No. 1:12-cv-174-TC, 2012 WL 5944257, at *15 (D. Utah Nov. 28, 2012) (citing *Robert Bosch*, 659 F.3d at 1149).

[31] *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013).

[32] *Id.*

irreparable harm."[33]  Yet, delay "constitutes but a single factor in the irreparable-harm balancing inquiry."[34]  "A period of delay is but one circumstance that the district court must consider in the context of the totality of the circumstances."[35]

Plaintiff first became aware that Defendant was developing or installing its own unitized track in February 2012, when Plaintiff obtained a sample of Defendant's one-piece track assembly.  In May 2012, Plaintiff's attorney sent a notice letter to Defendant, advising that Defendant's product appeared to fall within the scope of the '061 Publication.  The '914 Patent issued six months later, on November 27, 2012.  Plaintiff first received confirmation that Defendant was still installing the unitized track on May 1, 2013, when Plaintiff obtained photos of a partition system that was recently installed in San Tan Valley, Arizona.  Plaintiff filed its Complaint shortly thereafter, on May 10, 2013, and filed its Motion for Preliminary Injunction on June 4, 2013.  As such, one month passed between Plaintiff discovering what it believed to be an infringing installation and its request for injunctive relief.  The Court finds that this is not the type of delay that militates against a finding of irreparable harm.[36]

---

[33] *Cordis Corp. v. Bos. Scientific Corp.*, 99 F. App'x 928, 934 (Fed. Cir. 2004).

[34] *Advanced Commc'n Design, Inc. v. Premier Retail Networks, Inc.*, 46 F. App'x 964, 984 (Fed. Cir. 2002).

[35] *Hybritech, Inc. v. Abbott Labs.*, 849 F.2d 1446, 1457 (Fed. Cir. 1988).

[36] *See, e.g.*, *Advanced Commc'n Design*, 46 F. App'x at 984 (finding delay of three or four months insufficient on its own to undermine showing of irreparable harm).
11

Based on the foregoing, the Court finds that Plaintiff will suffer irreparable harm if an injunction is not granted.

C.     BALANCE OF EQUITIES

Defendant argues that Plaintiff should be held to a heightened standard because granting the preliminary injunction would alter the status quo between the parties.   Defendant urges the Court to adopt the following standard from the Tenth Circuit: "[W]hen a preliminary injunction would alter the status quo . . . the movant bears a heightened burden and must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms."[37]   The Federal Circuit considers "the position of the parties with respect to the status quo [when weighing] the ultimate balance of equities."[38]

"[T]he status quo is 'the last uncontested status between the parties which preceded the controversy until the outcome of the final hearing.'"[39]   "In determining the status quo for preliminary injunctions, this court looks to the reality of the existing status and relationship between the parties and not solely to the parties' legal rights."[40]

---

[37] *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007) (internal quotation marks omitted).

[38] *Revision Military, Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 526 (Fed. Cir. 2012).

[39] *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1260 (10th Cir. 2005).

[40] *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 269 F.3d 1149, 1155 (10th Cir. 2001).

12

The Court finds that the last uncontested status between the parties precedes Defendant's unauthorized use of the unitized track encompassed by Plaintiff's '914 Patent. The evidence before the Court is that Plaintiff contested Defendant's use of the unitized track as soon as Plaintiff became aware of it, even if Plaintiff did not file a complaint at that time. Therefore, a preliminary injunction would not alter the status quo between the parties. Further, the Court finds that the harm Plaintiff will suffer if the injunction is not issued outweighs any harm Defendant may suffer.

D.   PUBLIC INTEREST

"A preliminary injunction that enforces a valid patent against an infringer does no more than further public policy inherent in the patent laws designed to encourage useful inventions by rewarding the inventor with a limited period of market exclusivity."[41] The Federal Circuit has "long acknowledged the importance of the patent system in encouraging innovation."[42] Based on the foregoing, the Court finds that a preliminary injunction will serve the public's interest in preserving the right of a patent holder to exclude competitors from using an innovation.

---

[41] *Pfizer, Inc. v. Teva Pharm., USA, Inc.*, 429 F.3d 1364, 1382 (Fed. Cir. 2005) (internal quotation marks omitted).

[42] *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006).

## IV. CONCLUSION

It is therefore

ORDERED that Plaintiff's Motion for Preliminary Injunction (Docket No. 7) is GRANTED as follows:

Defendant, its officers, agents, servants, employees, attorneys, parents, subsidiaries and other related companies, and all persons acting in concert with Defendant are immediately enjoined:

1. From making, using, selling or offering for sale, any product incorporating the invention claimed in the '914 Patent, or any colorable imitation thereof, pending entry of final judgment in this action; and

2. From further acts of infringement of the '914 Patent.

3. This injunction shall become effective upon the posting by Plaintiff of a bond in the amount of $250,000.00.

DATED   October 3, 2013.

BY THE COURT

_____
The Honorable Ted Stewart
United States District Court Judge